and we have Ben Uther for the appellant, and we have Ms. Rebecca McCormick for the appellate. You may proceed. For the purposes of oral argument, I would like to focus the court's attention on the defendant's claim of ineffective assistance of counsel, and more specifically the interplay with his feeding trial violation. With regard to the defendant's other claims, I'd like to let the briefs stand unless you have any specific questions. Regarding the defendant's claim of ineffective assistance of counsel, the two-part standard delineated in Strickland and its progeny must be satisfied. The defendant must show that the counsel's representation fell below an objective standard of reasonableness, and two, counsel's substandard representation so prejudiced the defense that she denied the defendant a fair trial. In this case, it is the stipulated bench trial at which the defendant was convicted and sentenced to two consecutive 15-year terms, as well as the post-trial conduct of counsel that is the focus of his claim. Under the rubric described in Campbell and Horton, the stipulated bench trial in this case was tantamount to a guilty plea, as it presented no evidence, preserved no issues for appeal, and contained a stipulation that the evidence was sufficient to convict the defendant. The stipulated trial was little more than a formality in this case, and failed to subject the prosecution's case to any meaningful form of adversarial testimony. The State contends… How did the original charges were six counts of criminal sexual assault and two of child pornography? Did they just go away, or did his attorney negotiate them? No, that's exactly the point I was about to reach. The State contends that the stipulated trial was a matter of sound strategy from which he derived great benefit and cites the reduction of charges and the sentencing recommendation. But I – but the defendant's contention is that that characterization of counsel's conduct, it ignores the strategic benefit of a stipulated trial for this particular defendant. Counsel knew that he had been sentenced to 39 years in his previous – in the previous case against him. Any sentence in this case would, in effect, assure him a life sentence in prison. Now, I understand that was a separate case, but I think it leads you to the conclusion that the most important objective of the stipulated trial was to preserve, you know, suppression issues, speedy trial issues. For this client, that was undoubtedly the most important objective. And then the counsel's deficiencies were further compounded when he failed to file a proper post-trial motion preserving these issues as well. Because of these errors, there's a reasonable probability that this court will decline to review one or more of the defendant's claims and greatly diminish, if not foreclose, his ability to make a meaningful appeal. The defendant's claim of ineffective assistance is perhaps most pronounced within the context of the speedy violation claim – speedy trial violation claim. People v. PICO explains that a failure of defense counsel to argue a speedy trial violation in a post-trial motion will constitute ineffective assistance where there is at least a reasonable probability that a client would have been discharged had the issue been addressed in a post-trial motion and there was no justification for counsel's decision not to raise the issue. Accordingly, it's necessary to discuss the merits of this claim. In light of the extensive timeline of this case, I'm going to attempt to refrain from droning on with a series of dates and times and rather focus on a few specific issues and three specific periods of time. First, I'd like to discuss the state's interpretation of 103-5E of the speedy trial statute. A brief overview would probably help this analysis. Subsection A covers every person in custody and sets the speedy trial at 120 days from the date the defendant was taken into custody. Subsection B covers every person on bail or cognizance and sets the speedy trial clock at 160 days from the date the defendant demands trial. Subsection E, the operative subsection in this case, covers scenarios where the person is simultaneously in custody upon more than one charge pending against him in the same county or simultaneously demands trial upon more than one charge pending against him in the same county. In these cases, the speedy trial clock is set either according to A or B with regard to the first case, and with the pending cases, subsection E and the 160-day period comes into effect. And in any of these scenarios, the speedy trial clock is told where a delay is occasioned by the defendant. At the crux of the state's argument is the notion that the language, delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record, found in subsection A, is meant to redefine the concept of delay occasioned by the defendant found in A, B, and E. I think the interpretation is flawed in a number of respects. Upon a plain reading of the statute and in light of the common law definition of the phrase occasioned by the defendant, the language unambiguously refers to affirmative acts by the defendant that contribute to the delay. The amended language that requires that the defendant object to the delay, considered in the context of Healy that brought upon the amendment, and rather than redefine occasioned by the defendant, the legislature was attempting to add another requirement to subsection A scenarios. Perhaps due to the 120-day timeline, that's four months, perhaps they felt that in that situation it was crucial to add extra requirements to preserve, while preserving the defendant's right to speedy trial, but also protect against abuses of that right or attempts by counsel to circumvent. And had the legislature intended to have that language affect A, B, and E, they could have included it in every section, or as they did with subsection F, that unambiguously refers to all A, B, and E, they could have included it outside of all three sections. The state further contends that if the amended language does not apply to subsection E, it will be the only subsection where the defendant never has to make any kind of demand for a speedy trial, and that A and E both pertain to defendants in custody. I think a little bit of a closer analysis tends to refute these ideas. Subsection E not only applies to people in custody, it applies to people who simultaneously demand trial if I'm more than one charge. It can apply to an A scenario, a B scenario. And secondly, with regard to the state's contention that it's the only section where the defendant won't have to make any kind of demand, that's not entirely true. The first case pending against someone who simultaneously demands trial, they will have had to either have gone through an A scenario or a B scenario, and they will have been in the system this entire time. And it's only upon the second case, or the third or fourth or fifth, that subsection E even comes into play. And for whatever reason, the legislature found that in that scenario, that these three scenarios were distinct enough as to have different requirements in each, and different time frames, etc. And I think the most compelling part, and I'm going to, this is more for me than for you, I think, I'm going to, the encapsulated structure of subsection E, we have A, people in custody, 120 days. We have B, people on their own with cognizance, bail, 160 days. We have C, the provision that gives the state an additional 60 days, or 120 days in the case of DNA, to gather more evidence if they've shown due diligence and the court finds such and such. We have D, which has the effect of failing to comply with A, B, or C. And then we have E. It not only comes on a plain reading later in the statute, it comes, this scenario arises later in time and space in these other sections. And it includes its own 60-day provision for a continuance, and its own equivalent provision to subsection D, which has the effect of failing to comply with subsection E. And it is the defendant's contention that, you know, based on its encapsulated structure, the different scenarios in which the A, B, and E arise, that upon a plain reading of the statute, the requirement that the defendant must object to continuances found in A is not applicable in B or E. It's clear from the various subsections that the legislature felt that these scenarios were distinct enough to ensure the defendant's right to speedy trial is enforced while protecting against abuses or misuse of that right. Additionally, there are three substantial blocks of time that I'd like to discuss throughout the 530-day, 33-day period the defendant was in custody. Let me ask you a question here. Sure. We don't have the benefit of a reply from you, that I understand. But the state calculates that only 31 days is attributable to the state regarding the delays. How do you disagree with that? Well, in a moment I will discuss three substantial scenarios, one 56-day, one 102-days, and one 45-days, which we disagree on a number of points about who should be attributed that time. I think, would you like me to proceed? Sure. And if your question doesn't get answered quickly, please ask it. The first is from July 5th, 2007, August 31st, 2007, a 56-day block. The trial had previously been set for July 9th, but on the 5th, just a few days before trial, the state moved for a continuance for about 60 days because a material witness was unavailable and because essential exhibits were sent to this court for the defendant's pending appeal in his prior case. The state contends that because defense counsel mentioned that he would be on vacation on the backup trial date just two weeks after the continuance was asked for, that it should be attributable to the defendant. The state cites People v. Myers for the proposition that if there are two reasons for a delay, one attributable to the state, the other to the defendant, the fact that the delay was partially attributable to the defendant would be sufficient to hold the statute to return. And they also point to the fact that the defendant's pending appeal in another case, that they had to send exhibits off to that, was also a reason to attribute the delay to the defendant. This is not a situation where the defendant's acts in fact contributed to the delay. Where the state can ask for continuance of 60 days, I believe that it's inconsequential that the defense attorney would be on vacation on the backup trial date, on a backup trial date two weeks after the continuance was asked for. Had continuance not been asked for, the trial might have taken place on July 9th, and we might not be having this conversation right now. Additionally, the fact that the state sent away essential exhibits for an appeal in another case, without providing for its needs in the present action, should not be used to attribute the delay to the defendant. The butterfly effect from an appeal in another case, it's too, it's separated, it's too far removed, I guess I should say, from the present action to fall under the tolling rule in Myers. The second block, February 6th, 2008 to May 21st, 2008, a 102-day stint, the state again moved for continuance based on unavailability of a witness. The defendant did not object, and the court reset the trial date to May 21st. Well, as an initial matter, as I discussed a moment ago, the fact that the defendant didn't object is inconsequential as far as a subsection E scenario. And the state contends that the delay should be attributed to the defendant because the parties conferred and agreed on the proposed date. Now, there is no agreement on the record that would constitute an affirmative act by the defendant, such that a speedy trial clock should be suspended. Despite there being no transcript of any hearing on the state's motion to continue, the state contends that it is abundantly clear that there was joint approval of the new date based on a documentary by the judge stating, I left it up to the attorneys to set a trial date that everybody could make, and then apparently that was done. Because the next documentary is by the court clerk for attorneys of record, set trial for 5-21. Now, I suppose this is some evidence of agreement. But the requirement stated in Myers is that the agreement be on the record is not satisfied. Requiring an agreement such as this to be on the record for purposes of attributing delay removes the need for speculation about how this date came upon you. Did they have a knockout-dragout argument over how this date came upon us? Rather, it gives you a hard and fast rule requiring it to be on the record. Now, the state also contends that this continuance was properly granted under 103-5C, which grants up to a 60-day continuance upon application to the state, where the court determines that the state has exercised, without success, due diligence to obtain evidence materially based, and that there are reasonable grounds to believe that such evidence may be obtained at a later date. I would argue that, well, this is nitpicking if 103-5E is the proper subsection. But I agree. Either this continuance or the previous continuance could have been brought under that. However, there's 60 of 150-plus total days between these two continuances alone. The final period is June 6, 2008 through July 23, 2008, a 46-day period, if I think my calculus is correct. This is the time period between final pretrial and trial. As of the June 6 pretrial, the recently appointed public defender, Olson, had been on the case for around 15 days. At the pretrial, Counselor Olson indicated that he had spoken with the defendant but had not reviewed all the discovery materials. The court inquired about the availability of the July 23 trial date, and Olson answered, I should be ready to go. The state attributes this time period to the defendant as well, based on Olson's obvious and understandable lack of readiness. However, Olson did not propose a date, request additional time, or otherwise balk at the 45-day timeline in any way. In fact, based on my timeline, this is the shortest period between pretrial and trial throughout this entire process. It doesn't appear that Counsel's unpreparedness played any part whatsoever in the setting of this trial date. And again, I contend that the burden to move forward with the trial had shifted back to the state during the final stretch. These three periods account for 204 days. Minus the 60-day continuous provision, we're still at 140-plus days. The state and the defendant agree that at least 26 of the days, 31 depending on how it's calculated, are attributable to the state. Now, depending on the rates, we've seen how the court feels about these three time periods, but that alone puts it over 160 days to be a trial clock. Of course, you know, a substantial amount of time is in fact attributable to the defendant. Though, based on our discussion today and with further consideration of the briefs and oral argument, I believe the merit behind the defendant's speedy trial claim will be clear. And at least this court will find the reasonable probability necessary to uphold the defendant's claim of ineffective assistance of counsel. With regard to the defendant's remaining claims, I will let the briefs stand. And does the court have any questions? No, not at this time, Mr. Yost. You have had the opportunity for rebuttal. Thank you. Thank you. Mr. Foreman? Your Honor's counsel, the defendant's counsel arranged a very good deal for him in exchange for this stipulation and a bench trial. There's nothing that he gave up, but he did, he arranged the dismissal of six criminal counts, five of criminal sexual assault and one of child pornography. Those sentences are, if he had been convicted, would have been mandatory consecutive sentences. And what he arranged was that at most he would have two more consecutive sentences added on to the prior, consecutive to the prior case in which he had been sentenced to 39 years. So this was a very good strategy. Given the vast amount of evidence that the State had against the defendant, this was a very good deal. It was a very sound strategy. But moving on to the statutory construction argument, a statute should be read as a whole, and the goal of the reviewing court should be to effectuate the legislature's intent. In this case, subsection E of the speeding trial statute does mention subsections A and B in that it says that when a person is simultaneously in custody on more than one charge, he shall be tried or judged guilty after waiver of trial on at least one such charge before the expiration relative to any such pending charges of the period described by sections A and B. So it doesn't, subsection E doesn't exist in isolation from A and B, it refers to it. And so the first period when you're simultaneously in custody on more than one charge is to be judged under A or B depending. And in this case, the defendant had posted bond on one of the charges. Then when he was taken into custody on the other charges pertaining to KG, he could not post bond, and so he was in custody and then his bond was revoked in the instant case. So he was simultaneously in custody on two charges. And section B would not have applied to him. Section A would have in respect to the trial of the first charge, and that's what happened. And then it moves on to such persons shall be tried upon all the remaining charges thus pending within 160 days of the date. Now, when you read these, when you read A and E together, it shows that the legislature meant these sections to work together with respect to E. The thing that is in common between a defendant who is simultaneously in custody on more than one charge and a defendant who is in custody under section A is that they do not have to make a special written speedy trial demand. The speedy trial just begins to run. So these two should be read together. And in this case, you know, the defendant would have to do, under A, when the defendant is in custody and the speedy trial term begins to run automatically, the legislature specifically put in that section, referenced by E, that delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record. Now, that's the circumstance we have here when we are being tried, when the defendant was being tried for the second of the charges pertaining to SR, the instant case. He never made any speedy trial demand or any objection to any of the state's two motions for continuance. But on the other hand, he was a great deal of the cause for the delay. He went through many attorneys, and he obviously had no real interest, if you want to look at it subjectively, in moving this along because there were multiple motions and multiple delays, which are unequivocally, under the common law standard or under this standard, attributable to the defendant. The reason why this court should read A into E in that requiring a speedy trial demand or an objection is that E does incorporate A, and it would be anomalous to require defendants who are in custody on just one charge versus defendants who are in custody on more than one charge to queue to a different standard. And the legislative intent was clearly to put the onus on the defendant who doesn't have to make a formal speedy trial demand. But he has to object. He has to object, yes, yeah, right. But the reason, I mean, these two, the people, the defendants under E and A are similarly situated in that they're both in custody, and they don't have to make a formal speedy trial demand until they object to a continuance that is asked for by the state. Let me interrupt you just a moment. Because you cite people versus Buford, which the Second District held that the language was not applicable to Section B. What does that have to do with E? Your Honor, I didn't write this brief. Are you writing off the brief? I couldn't figure that out. But I think that the reason why Buford does say that the language in A does not apply to B. Right. And you can rationalize that by saying that the defendants under B are not situated. They have already made a speedy trial demand in order to initiate the speedy trial term. Because under B, you have to affirmatively do something to start the statutory term going. But under A and E, you do not. And in that sense, Buford doesn't apply to the circumstances of the present case, whether it's rightly or wrongly decided. And that's why B does not apply. And that is why the language that is in A should also be applied to defendants in the same circumstance in E, where they are in custody. They don't have to do anything to initiate a speedy trial term. But they ought to have to do something to say that they object to a continuance asked for by the State. And that's why that language, which is incorporated under the first term in E, under the first trial, should also be incorporated as it pertains to subsequent charges. It makes the statute read in a coherent manner. It effectuates legislative intent. And it doesn't produce an anomalous result in that some defendants who are in custody have to do something more to assert their speedy trial rights. But other defendants who are in custody under multiple charges don't. And so for all those reasons, this Court should construe E as incorporating A when it refers to defendants who are simultaneously in custody on more than one charge. And there is no Court that has said E should be incorporated into A, right? No, not to my knowledge. But there's a rationale. You know, the rationale being that the statute should be read as a whole. And E does incorporate A and B. And it does effectuate the legislative intent with that pertains to persons who are in custody as opposed to persons who are not in custody. And for those reasons, it would be a sound decision to incorporate that. But moving on to the delay attributable to the defendant, whether this Court construes the statute that way or not, as is set out in great detail in the People's Brief, the delays attributable to the defendant amount to 126 days, and the delay attributable to the state amounts to 31 days. And this defendant was not deprived of a statutory speaking trial right, and the Court was correct to deny the initial motion that was based on that. But we'll focus in on, and this is on page 14 of the People's Brief. On February 6th, the state filed a motion to continue, alleging that a material witness was unavailable due to surgery. There is no transcript of the hearing on that state's motion to continue, but the record seems to otherwise indicate that the parties did agree. The Court stated, recalled that the state's motion for continuance was granted without any objection by the defense. So this is an agreement. There was an agreement there. And then the other... Does the record show that he affirmatively agreed or just silently agreed? You know, there's no transcript of that hearing. The Court, recalling what happened, says that it was granted without objection. The docket entry? Yeah. No, it's in a transcript of May 21st, in which the Court states this on the record. Okay. And then... That Court statement was on the May 21st hearing on the defendant's motion to dismiss on speedy trial grounds, which was denied. And that's what it was. But the rest of the delay was clearly, as this Court can read the details, would bore you to death to read every date and every motion that this Court can look at that. And the record in the Court's ruling itself was correct, that these delays were attributable to the defendant. And the Court's committed no abuse of discretion in making those findings. And since counsel did not address those other issues, I'm not either. Thank you, Ms. McCormick. Do you have rebuttal, sir? Just to be sure. Well, going back to, first, the matter of ineffective assistance to counsel, the State's contention that it was a matter of sound strategy. I do not deny that, in any way, that the concessions by the State to dismiss several of the charges was, in some way, bad for the defendant. I'm not arguing that at all. But looking at the practical reality of the situation, these issues, suppression, speedy trial, are paramount to the defendant. And that's all I have to say about that. Regarding 103-5E again, rather than go tit for tat with canons of construction, I'm hanging my hat on the plain language of reading. And I agree that it doesn't exist in isolation. As I pointed out, when there are simultaneous cases going on, the first will fall under A or B. And then you fix it. And so I guess I'm having a little trouble understanding the State's argument only because under A or B in the first trial, they would have either had to be taken into custody, which initiates speedy trial, demand speedy trial, which initiates speedy trial, and then it gets initiated again for subsection E purposes at the close of the first case. So, to say that we should read the amended language in subsection A, that you should have to object to every continuous by State into E, because that's what the legislature intended, I can't agree with. Just looking at the statute, each subsection has different characteristics, whether it be 120-day period, 160-day period, whether you have to be in custody, whether you have to... And I feel that the legislature provided means to protect a defendant's right to speedy trial, while also, where they saw fit, protecting against abuses or people trying to take advantage of that right as a means of strategy. Regarding... And to say that someone that falls under a subsection E scenario has done nothing to initiate it, hasn't... I mean, he's been in the system, there's been multiple simultaneous cases going on, and I just felt like the State's interpretation kind of overlooks that first rule that you always see in the speedy trial rule blocks, you know, that the burden is on the State to effect a speedy trial. I mean, and the burden is on the State to know what initiates a speedy trial period and to push it along based on plain language in the statute. That's all. Any questions? No, I don't think so. Thank you both very much for your briefs and arguments. We'll take it under advisement.